**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**OCT 23 2001**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

MICHAEL R. HEATH,

      Plaintiff-Appellant,

v.

JOHN CHRISTNER TRUCKING,
INC., an Oklahoma Corporation,

      Defendant-Appellee.

No. 00-5177
(D.C. No. 99-CV-791-B)
(N.D. Okla.)

---

**ORDER AND JUDGMENT** *

---

Before **EBEL** , **ANDERSON** , and **KELLY** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously to grant the parties' request for a decision on the briefs without oral

argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore

ordered submitted without oral argument.

---

\*      This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Appellant Michael R. Heath appeals from summary judgment granted in favor of appellee John Christner Trucking, Inc. (JCT) on his state-law tort claim for wrongful termination brought pursuant to Oklahoma law. The district court's diversity jurisdiction arose under 28 U.S.C. § 1332 when JCT removed the action to federal court. Our jurisdiction arises under 28 U.S.C. § 1291, and we affirm

## I. Standard of review

Because the district court sat in diversity, it was obliged to apply the most recent statement of applicable Oklahoma law by the state's highest court. *See Wood v. Eli Lilly & Co.*, 38 F.3d 510, 512 (10th Cir. 1994). On appeal, we utilize "the normal federal standards of appellate review to examine the district court's decision process." *Mid-America Pipeline Co. v. Lario Enters., Inc.*, 942 F.2d 1519, 1524 (10th Cir. 1991). Thus, we review the district court's grant of summary judgment de novo, applying Oklahoma law. *See Charter Canyon Treatment Ctr. v. Pool Co.*, 153 F.3d 1132, 1135 (10th Cir. 1998). Under Fed. R. Civ. P. 56(c), summary judgment is proper only if the evidence, viewed in the light most favorable to the party opposing summary judgment, shows that there are no genuine issues as to any material fact, and that the moving party is entitled to judgment as a matter of law. *See id.*

## II. Relevant facts

Mr. Heath is a truck driver who asserts that he was wrongfully terminated on September 4, 1998 by John Christner, president and co-owner of JCT, in retaliation for his refusal to accept two allegedly illegal driving assignments on August 25 and 28, 1998. *See Burk v. K-Mart Corp.*, 770 P.2d 24, 28 (Okla. 1989) (adopting public policy exception to the at-will employment termination rule where the "discharge is contrary to a clear mandate of public policy as articulated by constitutional, statutory or decisional law"). He claims that the assignments would have required him to violate maximum-driving-time regulations as provided by the United States Department of Transportation ("DOT") and as incorporated into Oklahoma law.

JCT maintains that it terminated Mr. Heath for letting a refrigerated truck run out of fuel on August 31, 1998, which undisputedly is a violation of company policy that may result in immediate termination according to the employee handbook. It also argues that the assigned loads were not per se illegal because Mr. Heath could actually arrive at the delivery destination any time within seven hours of the stated delivery time.

The following facts are undisputed. Mr. Heath was assigned a load on August 25 requiring him to make a 2,600 mile run from California to Columbus, Ohio, by August 28. When Mr. Heath advised the dispatcher that he could not

deliver the load on time without violating his driving-time requirements, the dispatcher instructed him to deliver the load to the JCT yard in Sapulpa, Oklahoma, so that another driver could pick it up and finish delivery. Mr. Heath delivered the load in Sapulpa on August 27. Two hours later, he reported back, requesting to be dispatched out again and stating that he preferred to be dispatched west. According to Mr. Heath, the dispatcher appeared to be angry that Mr. Heath had not continued to Columbus with the original load, but told Mr. Heath to return later for a different dispatch. At between 9:00 a.m. and 10:00 a.m. on August 28, the dispatcher assigned Mr. Heath a different load to Columbus with documents indicating a 6:00 a.m. delivery time on August 29. Mr. Heath testified that he could not deliver the load by 6:00 a.m. without violating his maximum-driving-hours limitation.

It is undisputed, however, that he did not inform the dispatcher or anyone else at JCT of this potential problem or request clarification or an extension of the delivery time. He did not refuse the load but, instead, told the dispatcher only that he "would like a slower load." Aplt's App. at 160, 117. According to Mr. Heath, the dispatcher became angry, told him he had "just about had it" with him, and instructed him to give him back the assignment documents. *Id.* at 157.

The dispatcher testified that it was "general knowledge" that the particular load assigned on August 28 did not have to be delivered by 6:00 a.m. but could be

-4-

delivered any time between 6:00 a.m. and 2:00 p.m. *Id.* at 269-70. Mr. Heath was subsequently dispatched out on August 30 on a "slow load" going west, as he had requested. *Id.* at 207, 272. During this trip, he allowed the refrigeration unit on the trailer to run out of gas, necessitating repairs and risking the loss of the frozen load. When he returned to Sapulpa, John Christner called him into the office, confirmed that he had run out of fuel, and fired him. Evidence regarding the actual reasons for Mr. Heath's termination was conflicting. Viewing it in the light most favorable to Mr. Heath, the record shows that he was terminated both for refusing the August 28 load and for running out of gas.

## III. Discussion

Relying on *White v. American Airlines, Inc.*, 915 F.2d 1414 (10th Cir. 1990) (applying Oklahoma law), the district court held that, in order to survive summary judgment, Mr. Heath had to present evidence that (1) he was requested to accept a dispatch that would cause him to be in violation of DOT regulations; (2) Mr. Heath refused the dispatch and John Christner knew of the refusal; and (3) Mr. Heath's termination was significantly motivated by his refusal. The district court granted summary judgment in favor of JCT on its conclusion that Mr. Heath had failed to establish a genuine issue of material fact as to any of these three elements.

**A. Elements of wrongful termination.** Mr. Heath first argues that the district court improperly added an essential element of proof to his prima facie showing of wrongful termination by requiring him, pursuant to *White*, to present evidence that John Christner had knowledge of his refusal to carry an illegal load. He argues that *White* conflicts with Oklahoma Uniform Jury Instruction (OUJI-Civ) 21.2. That instruction provides that, in wrongful termination cases based on retaliation for refusing to do an illegal act, the plaintiff must show that (1) he was discharged; (2) he refused to do an illegal act; (3) a significant factor in the decision to discharge was retaliation for plaintiff's refusal to do the illegal act; and (4) plaintiff was damaged as a result of the discharge. OUJI-Civ 21.2 (Vernon's Okla. Forms 2d). Mr. Heath complains that the district court erroneously required a showing of John Christner's knowledge of his refusal to do an illegal act as part of the second element of the prima facie case and that OUJI 21.2 requires evidence of knowledge only in the third, causation element.

Mr. Heath's argument presents a distinction without a difference. In a retaliation case, if there is a question whether a terminating employer actually knew of its employee's refusal to do an allegedly illegal act, at some point in the employee's prima facie evidentiary presentation there must arise some evidence of that knowledge – otherwise, there could be no retaliation for refusing to do the illegal act. *Cf. Buckner v. Gen'l Motors Corp.*, 760 P.2d 803, 806 (Okla. 1988)

-6-

(holding that elements of prima facie case for retaliatory discharge for filing workers' compensation claim includes "receipt of treatment under circumstances *which put the employer on notice* that treatment had been rendered for a work-related injury") (emphasis added). The district court did not err in requiring direct or circumstantial evidence that John Christner knew that Mr. Heath refused to commit an illegal act.

**B. Genuine issues of material fact.** Mr. Heath next argues that there are genuine issues of material fact that preclude summary judgment. As to the first element – whether JCT required Mr. Heath to accept a dispatch that would cause him to be in violation of DOT regulations – the court considered several undisputed facts. First, the court noted that there was no dispute that when Mr. Heath advised dispatch of his belief that delivering the August 25 load would cause him to violate DOT regulations, he was immediately relieved of the dispatch, told to drop it in Sapulpa, and ultimately assigned another load. The court noted that the dispatcher testified that he knew that the Columbus destination had a flexible delivery time between 6 a.m. and 2 p.m. and that it was common knowledge in the industry. JCT submitted an undated memo from the Columbus facility stating that its receiving hours were from 6:00 a.m. to 2:30 p.m. with no appointment necessary. Further, Mr. Heath admitted that, if the delivery times on the August 25 and 28 loads were in fact flexible and not fixed,

he would not have been in violation of DOT regulations and could not have been fired for refusing to take a dispatch in violation of public policy. Aplt's App. at 303-04.

On appeal, Mr. Heath argues that a genuine issue of material fact exists as to whether the loads were illegal. He asserts that, because he was informed on August 25 that the load's delivery date of August 28 could not be rescheduled, it presents an issue relevant to whether the delivery time of 6:00 a.m. was a fixed time, which, he argues, is critical to the question of whether JCT required him to drive an illegal load. In regard to the August 25 load, Mr. Heath testified:

> . . . I noticed that the load was two *days* old, 2,600 miles. . . . I promptly informed dispatch . . . that I couldn't complete it on time. . . . In other words, not enough time to get it there. The original *five days* would have been very adequate. But only *three days*, it wasn't enough time. . . . They said they couldn't reschedule. They would split the load in Sapulpa.

*Id.* at 155 (italics added). This testimony indicates only that JCT could not reschedule the *date* that the load was to arrive. It does not raise a genuine issue whether the delivery *time* was fixed and could not be rescheduled. In fact, the delivery date was not rescheduled. Mr. Heath delivered the load to Sapulpa at noon on August 27, and another driver delivered it in Columbus on August 28, arriving within the Columbus facility's receiving hours.

The dispatcher testified that when a load had an absolutely fixed delivery time, assignment documents would also include a comment on the lines of

"[c]ustomer must have at 5 a.m.," for example, or the dispatcher would verbally tell the driver of the absolute delivery requirement. *Id.* at 176. It is undisputed that neither the August 25 nor the August 28 assignment documents included such a comment, nor did the dispatchers tell Mr. Heath that the deliveries had an absolute delivery time. Likewise, notwithstanding Mr. Heath's subjective belief that the Columbus loads were illegal for *any* driver to accept because of the allegedly fixed delivery time, in fact they were not, as demonstrated by the fact that the driver who took the August 28 load delivered it at 9:47 a.m. on August 29, well within the maximum-driving-time regulations.

Finally, Mr. Heath never advised JCT that he believed the August 28 load was illegal and he did not allege in the unemployment compensation hearings that he had been asked to take an illegal load on August 28. He represented that the load was a "hot" one, meaning that it had to be delivered quickly, and that if the dispatcher had denied his request for a slow load going west, he "would have simply taken what he gave me." *Id.* at 54.

Mr. Heath's assertion on appeal that he refused the Columbus loads because he thought they were illegal may be an honest one. His subjective belief, however, is not dispositive as to whether the loads were actually illegal. In Oklahoma, the public policy exception to at-will employment is "tightly circumscribed" and the employee's discharge must actually violate a "clear

mandate of public policy." *Burk*, 770 P.2d at 28-29; *Wheless v. Willard Grain & Feed, Inc.*, 964 P.2d 204, 206 (Okla. 1998) (favorably citing Michigan case in which requested act would "clearly violate the law of the state"). A request that may only theoretically violate a statute as interpreted by a particular individual does not meet the actual violation requirement. *Cf. Pearson v. Hope Lumber & Supply Co.*, 820 P.2d 443, 444 (Okla. 1991) (holding that trial court determines what the public policy is and jury then examines facts and decides "if the public policy was violated"). Under the facts recited above showing that JCT did not require Mr. Heath to drive per se illegal loads, summary judgment was proper.

Because Mr. Heath cannot establish that JCT required him to perform an illegal act, we need not address his other contentions on appeal. The judgment of the United States District Court for the Northern District of Oklahoma is AFFIRMED.

Entered for the Court

Stephen H. Anderson
Circuit Judge

-10-