FILED
United States Court of Appeals
Tenth Circuit

January 16, 2018

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JOHN SAGGIANI,

     Appellant,

v.

D. RAY STRONG, as the trustee of the
Consolidated Legacy Debtors Liquidating
Trust; D. RAY STRONG, as the trustee of
the Castle Arch Opportunity Partners I
Liquidating Trust,

     Appellees.

No. 17-4061
(D.C. No. 2:16-CV-00553-JNP)
(D. Utah)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **TYMKOVICH**, Chief Judge, **HARTZ** and **O'BRIEN**, Circuit Judges.
_____

John Saggiani appeals from a district court order affirming the bankruptcy

court's denial of relief under Fed. R. Civ. P. 60(b)(1) & (6).  We affirm.

I

The underlying Chapter 11 proceedings involved seven affiliated companies,

four of which were consolidated with Castle Arch Real Estate Investment Company,

_____

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal.  *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore
ordered submitted without oral argument.  This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel.  It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

LLC (CAREIC, but collectively, the Consolidated Legacy Debtors), as well as two other entities, Castle Arch Opportunities Partners I, LLC (Castle Arch I) and Castle Arch Opportunity Partners II, LLC (Castle Arch II). Saggiani was an equity holder in Castle Arch I.

As recited in the Trustee's disclosure statement and proposed plan of liquidation, the Consolidated Legacy Debtors, Castle Arch I, and Castle Arch II were each assigned a separate liquidating trust administered by the Trustee. The Trustee's role was complicated, however, by numerous claims the companies held against one another, including a preferential transfer claim asserted by CAREIC against Castle Arch I concerning real property located in Tooele, Utah (the Tooele Property Claim). This and other intercompany claims presented the Trustee with conflicts of interest. Thus, to eliminate the appearance of impropriety and mitigate the expense of compiling proofs of claims, the Trustee proposed supplanting the normal creditor-claims process, *see* 11 U.S.C. § 501; Fed. R. Bankr. P. 3001-3002, with an alternative dispute resolution process the parties referred to as Conflict Resolution Procedures (CRPs).

The CRPs provided for the appointment of an impartial Conflicts Referee who was "central to preventing and/or remedying conflicts or the appearance of conflicts which otherwise may be associated with resolution of the Intercompany Claims." Aplt. App. at 691. Under the CRPs, the Trustee was not to "oversee or direct the analysis or presentation of legal analysis of Intercompany Claims." *Id.* at 694. Instead, counsel for the trusts would advocate on behalf of their respective trust, and

2

the Conflicts Referee would resolve the intercompany claims, subject to approval by the bankruptcy court. The authority of the Conflicts Referee specifically extended to resolving the Tooele Property Claim. *See id.* at 692.

All of this information was set forth in the Trustee's disclosure statement and served on the parties in interest, along with materials for voting on the proposed plan of liquidation. *See* 11 U.S.C. §§ 1125-29 (providing for disclosure, solicitation, modification, and confirmation of Chapter 11 plans); *see also* Fed. R. Bankr. P. 2002(b) (providing for opportunity to object to disclosure statement). The bankruptcy court approved the disclosure statement and later held an evidentiary hearing on whether to confirm the Trustee's proposed plan of liquidation. After affording all parties notice and an opportunity to object, the bankruptcy court entered an order confirming the Trustee's plan of liquidation.

Thereafter, pursuant to the CRPs, the Consolidated Legacy Trust and the Castle Arch I Trust reached a settlement on the Tooele Property Claim. Under the relevant terms, title to the property was transferred back to the Consolidated Legacy Trust, which retained title to associated water rights, while the Castle Arch I Trust obtained the right to nearly $77,000 from the property-sale proceeds and an unsecured claim against the Consolidated Legacy Trust for $2.9 million. On November 12, 2014, with the recommendation of the Conflicts Referee, the Trustee moved to approve the settlement agreement, and on December 4, 2014, the bankruptcy court entered an order approving it.

3

Eleven months later, on November 3, 2015, Saggiani, who had become a beneficiary of the Castle Arch I Trust, filed a motion under Federal Rule of Civil Procedure 60(b)(1) & (6), seeking to set aside the order approving the settlement agreement.[1] Saggiani admitted he had notice of the motion to approve the settlement agreement. He also admitted he did not object to it. Yet he asserted he was entitled to Rule 60(b) relief because, under the bankruptcy court's final deadline for asserting intercompany claims, which was June 29, 2013, the Tooele Property Claim was time-barred before the court approved the settlement agreement on December 4, 2013. He argued he did not discover this defense until September 2015, when the issue was raised in related litigation involving one of the affiliated companies. Thus, he contended under Rule 60(b)(1) that his failure to timely object to the settlement motion was due to excusable neglect because he deferred to the Trustee's decision to settle the claim without conducting an independent investigation to verify whether the claims-bar date had passed. He also argued under the catchall provision of Rule 60(b)(6) that the settlement agreement could be set aside for "any other reason that justifies relief."

The bankruptcy court denied the Rule 60(b) motion, in part because it was untimely, but also because all the relevant facts were known to Saggiani or were easily discoverable at the time the court approved the settlement agreement. Additionally, the bankruptcy court ruled, among other things, that the plan

---

[1] Rule 60(b) is applicable to bankruptcy proceedings through Federal Rule of Bankruptcy Procedure 9024.

documents, including the approved disclosure statement and the confirmed plan, constituted an informal proof of the Tooele Property Claim such that even if the CRPs did not govern its resolution, the normal creditor-claims process foreclosed relief.[2] The district court affirmed, and Saggiani filed a notice of appeal.

II

Although the district court affirmed the bankruptcy court's denial of Rule 60(b) relief, we directly review the bankruptcy court's decision and do not defer to the district court's intermediate appellate analysis. *Paul v. Iglehart (In re Paul)*, 534 F.3d 1303, 1310 (10th Cir. 2008). We review the denial of a Rule 60(b) motion for "an abuse of discretion, keeping in mind that Rule 60(b) relief is extraordinary and may only be granted in exceptional circumstances." *Lebahn v. Owens*, 813 F.3d 1300, 1306 (10th Cir. 2016) (internal quotation marks omitted). "[A] Rule 60(b) motion is not an appropriate vehicle to advance new arguments or supporting facts that were available but not raised at the time of the original argument." *Id.* And because a Rule 60(b) "motion is not a substitute for an appeal[,] . . . our review is meaningfully narrower than review of the merits of a direct appeal." *Zurich N. Am. v. Matrix Serv., Inc.*, 426 F.3d 1281, 1289 (10th Cir. 2005) (citation and internal quotation marks omitted).

Relevant here, Rule 60(b) provides that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or

---

[2] Our disposition obviates any need to consider the bankruptcy court's alternative grounds for denying relief.

5

proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; . . . or (6) any other reason that justifies relief." Fed. R. Civ. P. 60(b). Saggiani contests the bankruptcy court's rulings that his motion was untimely and that he was not entitled to relief under either subsection (1) or (6).

*A. Timeliness*

Saggiani contends the bankruptcy court abused its discretion in denying his motion as untimely. "A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1); *see Tool Box, Inc. v. Ogden City Corp.*, 419 F.3d 1084, 1088 (10th Cir. 2005). "A motion is not timely merely because it has been filed within one year of the judgment." *White v. Am. Airlines, Inc.*, 915 F.2d 1414, 1425 (10th Cir. 1990). There must be a "sufficient justification for the delay," *Sorbo v. United Parcel Serv.*, 432 F.3d 1169, 1178 (10th Cir. 2005) (internal quotation marks omitted), "taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to other parties," *Mullin v. High Mountain*, 182 F. App'x 830, 833 (10th Cir. 2006) (unpublished).[3]

These factors confirm the motion was not filed within a reasonable time. The trusts have a substantial interest in implementing the settlement agreement, which was final in December 2014. Yet Saggiani offers only a weak explanation for

---

[3] We may consider non-precedential, unpublished decisions for their persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1(A).

delaying until November 2015 to file his Rule 60(b) motion. In his declaration, Saggiani admits he was served with the settlement motion and did not object to it because he "had no reason to question [the Trustee's] decisions on [his] behalf or the underlying factual basis stated by [the Trustee] in support of his settlement decisions." Aplt. App. at 41. He explains that he declined to conduct an independent investigation into the intercompany-claims bar date until he learned it had been raised as a defense in related litigation in September 2015. He says upon gaining a better understanding of the relevant facts, he retained counsel, who eventually filed the Rule 60(b) motion in November 2015.

This explanation does not sufficiently justify the delay. Rather, it indicates that all the facts relevant to Saggiani's defense were known or should have been known to him at the time he declined to object to the settlement motion. Indeed, he knew or should have known that the final intercompany-claims bar date was June 29, 2013. He also knew or should have known upon service of the settlement motion in November 2014 that the Conflicts Referee was recommending the settlement agreement for approval. The bankruptcy court gave him an opportunity to object before approving the settlement in December 2014, but Saggiani declined to do so and deferred to the Trustee's judgment. Nonetheless, if Saggiani had conducted his independent investigation, which presumably would have entailed reading the approved disclosure statement, the documents incorporated into the confirmed plan, and the settlement agreement, he would have discovered the interplay between the final intercompany-claims bar date and the CRPs, which is the basis for his belated

7

defense. Yet he chose not to investigate, and instead he waited eleven months to file for Rule 60(b) relief, which was particularly prejudicial, not only because it has stalled distribution of the settlement proceeds, but also because a primary purpose of appointing the Conflicts Referee was to avoid "the costs and professional fees associated with the resolution of the Intercompany Claims," Aplt. App. at 691. Under these circumstances, the bankruptcy court did not abuse its discretion.

*B. Rule 60(b)(1)*

Saggiani moved for relief under Rule 60(b)(1), arguing his failure to object to the settlement agreement was the result of "excusable neglect" because he deferred to the Trustee's judgment as his fiduciary. He says relief under Rule 60(b)(1) should be granted more liberally where, as here, the order approving the settlement agreement is effectively a default judgment. This argument fails for at least three reasons.

First, the record demonstrates the Trustee was not Saggiani's fiduciary. The approved disclosure statement and the relevant plan documents recognize the Trustee was conflicted by his appointment to the various trusts, which held intercompany claims against one another. Thus, the bankruptcy court approved the CRPs pursuant to which the Conflicts Referee was tasked with resolving the intercompany claims, counsel for each trust advocated on their behalf, and the Trustee was excluded from analyzing the claims. This sharply undermines Saggiani's claim for relief under Rule 60(b)(1). And in any event, he "has not demonstrated that an argument relating to [the Trustee's] fiduciary status was unavailable to him" at the time he failed to object to the settlement motion. *Lebahn*, 813 F.3d at 1308.

8

Second, the order approving the settlement agreement is not akin to a default judgment. The Trustee moved the bankruptcy court to approve the settlement agreement under Fed. R. Bankr. P. 9019(a) as a fair and equitable settlement among, and in the best interests of, the trust beneficiaries. The Conflicts Referee also recommended that the settlement agreement be approved. And the bankruptcy court set the motion to approve the settlement for a hearing, giving notice of the deadline to respond to all interested parties. Having received no response, the court independently reviewed the propriety of the settlement agreement and approved it. Given these proceedings, Saggiani's failure to respond or timely object does not transform the order approving the settlement agreement into a default judgment.

Third, and most importantly, Saggiani's failure to object was not excusable neglect. "[E]xcusable neglect is understood to encompass situations in which failure to comply with a deadline is attributable to negligence." *Jennings v. Rivers*, 394 F.3d 850, 856 (10th Cir. 2005) (ellipsis and internal quotation marks omitted). In this context, negligence means "to leave undone or unattended to especially through carelessness" or faultless omission. *Id.* (emphasis, brackets, and internal quotation marks omitted). But Saggiani's failure to object was not carelessness or faultless omission; it was a volitional choice he made as a beneficiary of the Castle Arch I Trust. "Rule 60(b)(1) relief is not available for a party who simply misunderstands the legal consequences of his deliberate acts." *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 577 (10th Cir. 1996). It is irrelevant that he denies knowing the basis for his untimely defense because those facts were available to him at the time he

9

elected not to object. *See Lebahn*, 813 F.3d at 1306 ("[A] Rule 60(b) motion is not an appropriate vehicle to advance new arguments or supporting facts that were available but not raised at the time of the original argument."). Saggiani asserts this principle is inapplicable because his "objections have never been heard or considered," Reply Br. at 6-7, but the reason they have not been heard is because he did not timely raise them.

*C. Rule 60(b)(6)*

Saggiani also sought relief under Rule 60(b)(6). He contends the bankruptcy court abused its discretion in denying relief because the Trustee was conflicted in resolving the intercompany claims and failed to disclose all the facts and issues underlying the purported time-bar to the Tooele Property Claim. He asserts the Trustee violated the CRPs and the court should have remediated the violation by invalidating the settlement agreement under Rule 60(b)(6).

Rule 60(b)(6) relief is exclusive of the other enumerated subsections of Rule 60(b), "is even more difficult to attain[,] and is appropriate only when it offends justice to deny such relief." *Zurich*, 426 F.3d at 1293 (internal quotation marks omitted). "The denial of a 60(b)(6) motion will be reversed only if we find a complete absence of a reasonable basis and are certain that the decision is wrong." *Id.* (ellipsis and internal quotation marks omitted).

Saggiani's arguments miss the mark. He characterizes these circumstances as exceptional because the Trustee allegedly violated the CRPs by failing to disclose the purported time-bar, but all the relevant facts were available to him when he elected

10

not to investigate or object to the settlement motion. "The broad power granted by clause (6) is not for the purpose of relieving a party from free, calculated and deliberate choices he has made. A party remains under a duty to take legal steps to protect his own interests." *Cashner,* 98 F.3d at 580 (brackets and internal quotation marks omitted). Saggiani failed in that endeavor, but that does not mean the bankruptcy court abused its discretion in denying relief under Rule 60(b)(6).

III

The judgment of the bankruptcy court is affirmed.

Entered for the Court


Terrence L. O'Brien
Circuit Judge

11