(764 P.2d 459)

No. 61,874

STATE OF KANSAS, *Appellant*, v. BOARD OF EDUCATION OF UNIFIED SCHOOL DISTRICT NO. 305, SALINE COUNTY, STATE OF KANSAS; VICKI PRICE; CATHY ROBERTS; MARY ANDERSEN; STEPHEN E. ASCHER; JERRY LUNDGRIN; LARRY MATHEWS; and JOCELYN PALMER, *Appellees*.

Opinion filed November 10, 1988.

Before ELLIOTT, P.J., JOHN C. GARIGLIETTI, District Judge, assigned, and HARRY G. MILLER, District Judge Retired, assigned.

ELLIOTT, J.: The State appeals the district court's findings that the Board of Education of Unified School District No. 305 (Board) did not, on two separate occasions, violate the Kansas Open Meetings Act (KOMA), K.S.A. 75-4317 *et seq.* The matter was presented to the trial court on stipulation and the live testimony of the Board president.

We affirm.

When the Board faced an asbestos removal crisis, it placed before the public a bond election to fund the removal process. The amount for asbestos removal placed in the bond election was based on architects' estimates.

Actual bid amounts were submitted about two weeks prior to the election. When opened, four nonelected administrators learned that the asbestos removal bid amounts were about double the figure placed on the ballot for election. None of the

administrators informed either the Board or the public of the bid amounts until after the election.

On April 11, 1987, the Board called a special meeting. Except for the opening and closing minutes of the lengthy meeting, the Board met in executive session, during which the members discussed the failure of the named administrators to inform the Board of the bids; the extent of the administrators' legal rights; whether other persons could have had pre-election knowledge of the bids; whether any Board members had such pre-election knowledge; whether an investigative committee should be formed and, if so, what qualifications would be appropriate; and what compensation for committee members might be in order.

The State contends the April 11 meeting went beyond the scope of the stated reason for going into closed session (personnel matters relating to nonelected persons).

What was discussed during the closed session of April 11 was established by stipulations and the testimony of Board president Vicki Price. The discussion may be summarized thus:

a) Discussion and speculation as to whether persons other than the four specific administrators may have had pre-election knowledge of the bids due to the open door policies of the four named individuals. Some talk also concentrated on whether the four administrators may have talked with persons outside the school system.

b) Discussion about public accusations that Board members had pre-election knowledge of the bids. Essentially, the Board tried to recreate the two weeks leading up to the election to determine if any Board members had talks with the four named administrators about the bids.

c) Discussions as to whether the Board had sufficient information upon which to proceed with discipline against the four individual administrators without subjecting the Board or individual members to potential liability, which led to a discussion of the wisdom of appointing an investigative committee. The Board talked about qualifications of committee members and the necessity that they have no apparent conflict with Board members, Board counsel, and the four named administrators they would be investigating.

d) The Board discussed names of potential committee members and whether they met the criteria established and whether

any had potential conflicts with Board members or the four named administrators. The Board also talked about compensation to be paid committee members.

Throughout the closed discussions concerning the wisdom of appointing a committee, the Board concluded it did not have sufficient facts to determine the precise role played by the four administrators. Most of the discussion revolved around who might be available to serve on the committee without a conflict with the four named individuals or Board members.

Additionally, the State contends that the Board also violated the KOMA during its May 20, 1987, meeting by voting to go into closed session as the result of a motion stating the closed session was "for the purposes of discussing personnel matters of non-elected personnel because if this matter were discussed in open session it might invade the privacy of those discussed." The State contends the motion does not meet the purpose and justification requirements of the KOMA.

The trial court found that the Board did not violate the KOMA on either occasion.

### 1. General Discussion of the KOMA

The parties agree the Board is subject to the KOMA by virtue of K.S.A. 1987 Supp. 75-4318. Further, no one denies that the clear purpose of the KOMA is to promote an informed electorate through open conduct of governmental affairs; that the act is to be construed to support that policy; and that the burden is on the Board to show that the executive session was not a violation of the KOMA. K.S.A. 75-4317; *State ex rel. Murray v. Palmgren*, 231 Kan. 524, Syl. ¶ 4, 646 P.2d 1091 (1982); K.S.A. 75-4320a(b).

### 2. The April 11 Meeting

The question presented in the instant case is whether the Board exceeded the applicable limitation of the KOMA providing that no subject shall be discussed in closed session except "personnel matters of non-elected personnel." K.S.A. 75-4319(b)(1).

The KOMA does not define "personnel matters"; however, it has been suggested that the purpose of this exception is to protect privacy rights of employees, save personal reputations, and encourage qualified people to remain in government employ. *E.g.*, Tacha, The Kansas Open Meetings Act: Sunshine on the Sunflower State?, 25 Kan. L. Rev. 169, 195 (1977).

We find no Kansas case directly on point, and hasten to add that KOMA issues are, of necessity, so fact sensitive that published opinions usually are helpful only as general guidelines. Specific roadmaps are seldom to be found.

We have, however, found some useful guidance from federal authorities. The federal Government in the Sunshine Act, 5 U.S.C. § 552b (1982), like the KOMA, states the policy that the government's business should be conducted in the open, requires that exceptions to open meetings be narrowly construed, and requires the agency to sustain the burden of justifying the closed session. *E.g., Clark-Cowlitz Joint Operating Agency v. F.E.R.C.*, 798 F.2d 499 (D.C. Cir. 1986).

Federal cases which find a violation of the Sunshine Act nonetheless recognize that if segregation of exempt and nonexempt topics would make a coherent discussion impossible, then it may be reasonable to close an entire meeting. *Common Cause v. Nuclear Regulatory Commission*, 674 F.2d 921, 936 n.46 (D.C. Cir. 1982); *A. G. Becker, Inc. v. Board of Governors*, 502 F. Supp. 378 (D.D.C. 1980).

*A. G. Becker, Inc.* is illustrative of federal cases dealing with issues similar to those we face in the present case. There, the Board of Governors was faced with a discussion of issues, part of which were exempted from the Sunshine Act and part of which were at least arguably not exempted. The Board voted to close the entire meeting. 502 F. Supp. at 381. The Board justified the closure on the basis that a common thread running throughout the meeting was a frank discussion of legal strategies for any administrative or legal proceedings it might seek, thus precluding meaningful segregation of the topics. 502 F. Supp. at 383.

In finding no violation of the Sunshine Act, the court adopted the view that, under the circumstances, separating the meeting into open and closed sessions was not reasonably possible. 502 F. Supp. at 387. Accord *Shurberg Broadcasting of Hartford, Inc. v. F.C.C.*, 617 F. Supp. 825, 829 (D.D.C. 1985).

We think the pragmatic approach utilized by the federal courts and the trial court below is the proper view. In finding no violation of the KOMA, the district court found that to segregate the topics into open and closed sessions would have been very burdensome and impractical, if not impossible, due to the com-

mon thread of the connection of the four named individuals, whose privacy should be protected, to the events discussed.

The trial court found:

"The common thread that runs through all discussions undertaken by the Board in executive session on that date [April 11], is that such discussions were focused upon the four school administrators and other Central Office staff members, and their role in the asbestos controversy. It is clear that the employees were identified by name; their roles in the controversy were questioned; potential discipline was debated; and the employee's [sic] connection with the potential investigative committee members discussed. Clearly, if these matters had been discussed at open meeting, the privacy of those persons named would have been invaded."

We cannot say the trial court erred in its findings.

3. The Motion at the Meeting of May 20, 1987.

Little need be said about this issue. The Board's motion for closed session states the closure was "for the purposes of discussing personnel matters of non-elected personnel because if this matter were discussed in open session it might invade the privacy of those discussed."

The wording of this motion is essentially identical to that used at the lengthy special meeting of April 11. The State has no quarrel with the sufficiency of the April 11 motion.

K.S.A. 75-4319(a) provides that public bodies may go into closed session by a motion which shall state the justification for closure, the subjects to be discussed, and the time at which an open meeting is to resume. K.S.A. 79-4319(b)(1) lists personnel matters of nonelected personnel as a subject which may be discussed in closed session. It seems logical to us that the privacy rights of nonelected personnel subject to discussion is sufficient justification for a closed session to meet the requirements of the KOMA.

The trial court did not err in so holding.

Reviewing the evidence in a light most favorable to the Board, as we must, the trial court's findings are supported by substantial competent evidence. *In re Adoption of F.A.R.*, 242 Kan. 231, 235, 747 P.2d 145 (1987).

The judgment is affirmed.