The EVANSVILLE COURIER,
Appellant–Plaintiff,

v.

Robert WILLNER, Richard Borries, Carolyn McClintock, in their capacities as Commissioners of Vanderburgh County, and County Commission of Vanderburgh County, Appellees–Defendants.

No. 82A01–8912–CV–506.

Court of Appeals of Indiana,
First District.

May 14, 1990.

Patrick A. Shoulders, Early, Arnold & Ziemer, Evansville, for appellant-plaintiff.

David V. Miller and R. Jeff Dodson, Bowers, Harrison, Kent & Miller, Evansville, for appellees-defendants.

RATLIFF, Chief Judge.

## STATEMENT OF THE CASE

The Evansville Courier (Courier) appeals the judgment for Robert Willner (Willner),

Richard Borries (Borries), and Carolyn McClintock (McClintock), in their capacities as Commissioners of Vanderburgh County, and for the County Commission of Vanderburgh County (Commission) in Courier's action seeking, because of an alleged violation of the Indiana Open Door Law[1], to invalidate the Commission's employment of Jerry Riney (Riney) as Administrative Assistant and Superintendent of County Buildings (Superintendent). We reverse and remand.

## FACTS

In December 1988, the Commission was composed of incumbent Democrats Willner and Borries, and Shirley Cox (Cox), a Republican. Cox's term was to expire December 31, 1988. During the 1988 General Election, McClintock, a Republican, opposed Democrat Riney for Cox's position and won.

It was clear on the night of the 1988 General Election that the person serving as Superintendent had won another position and that the Superintendent position would be vacant effective January 1, 1989. The Superintendent position is appointive and is controlled by the members of the Commission, since the appointee also serves as the Administrative Assistant to the Commission. Willner and Borries, present at Democratic Party Election Headquarters on that evening, discussed the potential appointment of Riney as Superintendent. During the succeeding weeks, Willner and Borries several times discussed appointing Riney or other individuals for the position. Also, during that period, Riney spoke separately with Willner and Borries regarding Riney's interest in the position and his prospects of being appointed.

At some point prior to December 27, 1988, Willner and Borries each separately concluded he could support Riney for the Superintendent's position. Neither Willner nor Borries consulted either Cox or McClintock prior to December 27, 1988, regarding who Willner and Borries were considering for the position. No Commission executive session was held to discuss appointees for

the position and no notice was given prior to December 27, 1988, by Willner, Borries, or the Commission to the media or the public about making an appointment.

On the morning of December 27, 1988, Borries contacted Riney, told Riney that Riney was the choice of Borries and Willner for Superintendent, and asked Riney to come to the commission office for a news conference at 11:30 a.m. At the news conference, in the presence of Willner and Riney, Borries announced Riney would assume the duties of Superintendent effective January 1, 1989.

On the afternoon of December 27, 1988, the regular meeting of the Commission was held. An agenda, indicating the Commissioners' intention of appointing a Superintendent, was posted prior to the meeting. Borries and Willner attended the meeting. Cox was out of town on vacation, but McClintock attended as a non-voting observer. Borries and Willner constituted a quorum of the Commission. Without having discussed the matter during the meeting and without having taken a roll call vote, Borries announced Riney was the Commissioners' choice to fill the Superintendent position. Borries also read aloud from a standard employment change form, listing Riney's appointment, his address, and his salary. Then, Borries and Willner signed the employment change form and gave it to the Secretary of the County Commission to become part of the Commission's official minutes. Further facts will be provided as necessary to the discussion.

## ISSUES

Courier raises three issues which we restate as:

1. Whether the trial court erred by finding the discussions and meetings between Commissioners Willner and Borries, relating to hiring Riney as Superintendent, constituted political caucuses which were exempt from the Indiana Open Door Law.

2. Whether the trial court erred by finding the action taken by Commissioners

1. IND. CODE § 5–14–1.5–1 to –7.

Willner and Borries at the regular meeting of the Vanderburgh County Commission on December 27, 1977, constituted appropriate final action curing any violation of the Open Door Law.

## DISCUSSION AND DECISION

### Issue One

The Courier[2] contends the trial court erred in concluding the meetings of and discussions between Willner and Borries, regarding the hiring of Riney as Superintendent, constituted political caucuses which were exempt from Open Door Law provisions. The Courier argues the meetings and discussions prior to December 27, 1988, were deliberations involving official action of a public agency which, therefore, were required to be open to the public or were required to be scheduled in advance as executive sessions with notice given to the public. Because the meetings and discussions were private, the Courier argues they were violations of the Open Door Law.

■ It is undisputed that the Commission and the Commissioners, Borries, Willner, and McClintock, are subject to the Open Door Law. *See* Finding of Fact 2, Record at 67, and Conclusion of Law 3, Record at 73. Therefore, pursuant to IND. CODE § 5–14–1.5–3, in order to conduct official business, the Commissioners must meet openly unless they are in "executive session"[3] pursuant to IND.CODE § 5–14–1.5–6. The Commissioners, however, argue that political caucuses are also an exception to the general rule that public business must be conducted openly.

■ When it enacted the Open Door Law, our General Assembly expressed its intention that the business of the State of Indiana and its political subdivisions should be conducted openly and be subject to the scrutiny of the general public. *Common Council of City of Peru v. Peru Daily* (1982), Ind.App., 440 N.E.2d 726, 729. IND.CODE § 5–14–1.5–1. We must liberally construe the statute in order to give effect to the legislature's intention. *Id.* Any exceptions to the statute must be strictly construed. *Id.* Thus, all doubts must be resolved in favor of requiring a public meeting and all exceptions to the rule requiring open meetings must be narrowly construed.

■ A "meeting" is "a gathering of a majority of the governing body of a public agency for the purpose of taking official action upon public business." IND.CODE § 5–14–1.5–2(c). " 'Caucus' means a gathering of members of a political party or coalition which is held for purposes of planning political strategy and holding discussions designed to prepare the members for taking official action." IND.CODE § 5–14–1.5–2(h). Under IND.CODE § 5–14–1.5–2(c)(4), "meeting" does not include a "caucus". Keeping in mind our duty to liberally construe the statute and to narrowly construe exceptions to the statute, we reject the Commissioners' argument that a discussion of public business involving official action by members of a public agency can occur in caucus if the matter at hand has political ramifications. Such an interpretation of the political caucus exemption from the Open Door Law would consume the rule that public business must be conducted openly, since every decision of an elected official has the potential to affect that official's political career.

---

2. The trial court correctly noted the Courier is a "person" within the definition of IND.CODE § 5–14–1.5–2(k) and thus had standing, pursuant to IND.CODE § 5–14–1.5–7(a), to file a complaint under the Open Door Law.

3. A governing body may exclude the public when meeting in executive session. An executive session may only be held in specific instances, such as when the governing body receives information about and interviews prospective employees, IND.CODE § 5–14–1.5–6(b)(4), and during preliminary steps of the consideration of the appointment of a public official, IND.CODE § 5–14–1.5–6(b)(9). The meetings in question were not executive sessions because public notice of the date, time, place, and subject matter of the meetings was not given at least forty-eight (48) hours in advance pursuant to IND.CODE § 5–14–1.5–5(a) and because no memoranda or minutes of the meetings were made available to the public pursuant to IND.CODE § 5–14–1.5–6(d). The Commissioners concede the meetings were not executive sessions and the trial court so found in Finding of Fact 14, Record at 71.

Furthermore, such an interpretation would permit members of the political majority to use the caucus exemption to exclude minority party members from deliberations.

The Commissioners cite no support for their view other than *State Ex Rel. Lynch v. Conta* (1979), 71 Wis.2d 662, 239 N.W.2d 313. In *Conta*, the Supreme Court of Wisconsin held that the Wisconsin Open Meeting Law provision for closed session partisan caucuses of members of the state legislature reflected the legislature's intent that members of the legislature be able to discuss governmental business in order to attain a unified party position on matters. *Id.* at 693, 239 N.W.2d at 333.

■ First, we note that the precedential effect of *Conta* is questionable in light of the Wisconsin legislature's amendment of WIS.STAT. § 19.81(4) (1983) which now provides for liberal construction of the Open Meeting Law. Such an amendment indicates the Wisconsin legislature meant the political caucus exception be narrowly interpreted. *See, generally, State Ex Rel. Newspapers, Inc. v. Showers* (1987), 135 Wis.2d 77, 398 N.W.2d 154. Second, we note that other courts facing the same question have held the broad remedial goals of open door legislation would be ill-served if the political caucus exception were to be interpreted to permit closed discussions of public business merely because a matter has political ramifications. *See, e.g. Sacramento Newspaper Guild v. Sacramento County Board of Supervisors* (1968), 263 Cal.App.2d 41, 69 Cal.Rptr. 480; *News–Journal Company v. McLaughlin* (1977), Del.Ch., 377 A.2d 358; *People Ex Rel. Difanis v. Barr* (1980), 83 Ill.2d 191, 46 Ill.Dec. 678, 414 N.E.2d 731; *South Harrison v. Board of Chosen Freeholders* (1986), 210 N.J.Super. 370, 510 A.2d 42; *Sciolino v. Ryan* (1981), App.Div., 81 A.D.2d 475, 440 N.Y.S.2d 795. We agree with these states and hold private discussions and meetings concerning public business and involving official action may not be held between members of a public agency under the political caucus exemption from the Indiana Open Door Law.

As noted above, a "meeting" is "a gathering of a majority of the governing body of a public agency for the purpose of taking official action upon public business." IND.CODE § 5–14–1.5–2(c). " 'Official action' means to: (1) receive information; (2) deliberate; (3) make recommendations; (4) establish policy; (5) make decisions; or (6) take final action." IND.CODE § 5–14–1.5–2(d). " 'Public business' means any function upon which the public agency is empowered or authorized to take official action." IND.CODE § 5–14–1.5–2(e). " 'Deliberate' means a discussion which may reasonably be expected to result in official action defined under subsection (d)(3), (4), (5), or (d)(6)." IND.CODE § 5–14–1.5–2(i).

In *Turner v. Town of Speedway* (1988), Ind.App., 528 N.E.2d 858, the Board of Metropolitan Police Commissioners of Speedway held an informal breakfast to discuss who would be promoted to the rank of uniform sergeant for the town. We held the breakfast meeting was a meeting to which the Open Door Law applied because the commissioners had engaged in deliberations, pursuant to IND.CODE § 5–14–1.5–2(c), by holding a discussion which could reasonably be expected to result in a decision being made on the promotions. *Id.* at 62.

None of the parties here question that one of the Commission's functions, for which it had authority to take final action, was the hiring of a new Superintendent of County Buildings who would also serve as Administrative Assistant for the Commission. In its Finding of Fact 7, Record at 68–69, the trial court found that Borries and Willner, while at Democratic Party Election Headquarters on the night of the 1988 General Election, privately discussed the potential hiring of Riney as Superintendent. In that Finding, the court also stated, "Over the period of the following several weeks, Borries and Willner, from time to time, both by telephone and face to face, continued additional private discussions concerning the potential hiring of Riney, as well as other individuals, to replace [the current Superintendent]." Record at 69. Such findings support a conclusion

that Borries and Willner received information about the qualifications of Riney and others. Such findings also support a conclusion that Borries and Willner, by holding discussions regarding the hiring of Riney as Superintendent which discussions might reasonably be expected to result in their making recommendations or decisions or taking final action, deliberated. The fact the press conference in which Riney's appointment was announced was held prior to the regular Commission meeting of December 27, 1988, is further evidence that Willner and Borries had already deliberated about appointing Riney and had reached a decision prior to the formal appointment made during that meeting. Therefore, we hold that part of the trial court's Conclusion of Law 11 in which the court concluded the news conference did not indicate official action had previously been taken was a clearly erroneous conclusion. By their receiving information and deliberating about hiring Riney, we conclude Borries and Willner, like the commissioners in *Turner*, took official action about public business. Their meetings and discussions were, therefore, violations of the Open Door Law.

We reverse the trial court's clearly erroneous conclusion that Borries' and Willner's discussions merely constituted the planning of political strategy and the preparations for final action by fellow Democrats.

*Issue Two*

The Courier contends the trial court erred by finding action taken by Commissioners Willner and Borries at the regular meeting of the Vanderburgh County Commission on December 27, 1988, constituted appropriate final action for appointing Riney as Superintendent. The Courier maintains the action taken on December 27, 1988, constituted a secret ballot vote which is prohibited by IND.CODE § 5–14–1.5–3(b).

" 'Final action' means a vote by the governing body on any motion, proposal, . . . or order." IND.CODE § 5–14–1.5–2(g). In mandating the memoranda to be kept of a meeting of a public agency, IND.CODE

§ 5–14–1.5–4(b)(4) requires "[a] record of all votes taken, by individual members *if* there is a roll call" be kept. (Emphasis added.) Nothing in the Open Door Law, IND.CODE §§ 5–14–1.5–1 to –7, requires votes be taken by motion, second of a motion or roll call vote.

■ Here, the trial court found appropriate notice of the regular Commission meeting was given in advance. *See* Finding of Fact 15, Record at 71. The court found the Commission followed its usual practice in not making a formal motion or second motion, or taking a roll call vote on Riney's appointment. *See* Finding of Fact 16, Record at 72. The court also concluded the announcement of the contents of the employment change form, the introduction of Riney, the signing of the form by a quorum of voting members, i.e. Borries and Willner, the inclusion of the signed employment change form in the official minutes, and the recordation of the action in the minutes all together constituted a public vote and appropriate final action for the hiring or appointment of Riney. *See* Finding of Fact 16, Record at 71–72, and Conclusion of Law 12, Record at 75. We agree with the trial court's findings and conclusions on this matter and hold the Commissioners did not take a secret ballot vote.

■ Even though we find the trial court did not err in finding the final action taken on December 27, 1988, was proper, we must still address the question of whether such final action could cure the violation of the Open Door Law which occurred during Willner's and Borries' private discussions. The legislature has provided us with an answer to that question: "If a court finds that a governing body of a public agency has violated this chapter, it may not find that the violation was cured by the governing body by only having taken final action at a meeting that complies with this chapter." IND.CODE § 5–14–1.5–7(c). Thus, the final action taken on December 27, 1988, did not cure the earlier violation.

We reverse the trial court judgment. Because the trial court found the Commissioners' actions were caucuses and not violations of the Open Door Law, it did not

address factors which must be considered in fashioning an appropriate remedy to a violation of the Open Door Law statute. Since such evidence was not before the trial court, we are unable to address those factors in order to fashion a remedy and we must remand to the trial court to fashion a proper remedy pursuant to IND. CODE § 5–14–1.5–7.

IND.CODE § 5–14–1.5–7(a) provides that an action may be filed to obtain a declaratory judgment, to enjoin violations of the statute, or to declare a final action, decision, or policy void. In its complaint, the Courier requested the trial court to declare the position of Superintendent vacant since January 1, 1989, and enjoin the Commission from subsequently hiring Riney until the subject has been given substantial consideration at an open meeting of the Commission. The trial court, in determining whether to declare void the Commissions's final action to appoint Riney, should consider the factors listed in IND.CODE § 5–14–1.5–7(d), among other relevant factors. Thus, the trial court should consider:

"(1) The extent to which the violation:

(A) affected the substance of the ... final action;

(B) denied or impaired access to any meetings that the public had a right to observe and record; and

(C) prevented or impaired public knowledge or understanding of the public's business.

(2) Whether voiding of the ... final action is a necessary prerequisite to a substantial reconsideration of the subject matter.

(3) Whether the public interest will be served by voiding the ... final action by determining which of the following factors outweighs the other:

(A) The remedial benefits gained by effectuating the public policy of the state declared in section 1 of this chapter.

(B) The prejudice likely to accrue to the public if the ... final action is voided, including the extent to which persons have relied upon the validity of the challenged action and the effect declaring the challenged action void would have on them."

Therefore, this cause must be remanded to the trial court for further action in light of the provisions of IND.CODE § 5–14–1.5–7, and consistent with this opinion.

Reversed and remanded.

BAKER and SULLIVAN, JJ., concur.