Dariel D. HINSDALE, et al., Plaintiffs,

v.

**CITY OF LIBERAL, KANSAS, et al., Defendants.**

No. 96–1249–FGT.

United States District Court, D. Kansas.

April 21, 1997.

Ray E. Simmons, Wichita, KS, for Plaintiffs.

Rex Sharp, Sharp, McQueen, McKinley, Dreiling & Morain, Liberal, KS, Alan L. Rupe, Kelly J. Johnson, Morrison & Hecker, L.L.P., Wichita, KS, for Defendants.

## MEMORANDUM AND ORDER

REID, United States Magistrate Judge.

On December 24, 1996, plaintiffs filed a motion to compel, for sanctions, and for extension of scheduling order (Doc. 22–24). Defendants filed a motion for protective order on December 27, 1996 (Doc. 25). Plaintiff filed a response on January 3, 1997 (Doc. 27), and defendant filed a response on January 31, 1997 (Doc. 44). Plaintiff filed a supplemental brief on April 7, 1997 (Doc. 55).

The issue raised by the above motions concerns whether or not executive sessions of the Liberal City Commission are privileged from discovery. The basis for defendants' claim of privilege is contained in K.S.A. 75–

4319(b), which is part of the Kansas Open Meetings Act. The Kansas Open Meetings Act generally provides that all meetings of governmental bodies be open to the public. K.S.A. 75–4317. K.S.A. 75–4319 provides for closed or executive sessions of governmental bodies in certain situations. Defendants specifically claim that the following provisions of K.S.A. 75–4319(b) render executive sessions of the City Commission privileged from discovery:

> No subjects shall be discussed at any closed or executive meeting, except the following:
>
> (1) Personnel matters on nonelected personnel;
>
> (2) consultation with an attorney for the body or agency which would be deemed privileged in the attorney-client relationship. . . .

Before addressing the merits of the motion, the court must first rule on a motion to certify a question of law to the Kansas Supreme Court, filed by the defendants on February 7, 1997 (Doc. 47). A response was filed on February 11, 1997 (Doc. 50), and a reply brief was filed on February 28, 1997 (Doc. 54).

Defendants seeks to certify the following question to the Kansas Supreme Court:

> Does Kansas law recognize executive sessions of state and local governments, conducted pursuant to K.S.A. 75–4319(b), as privileged from disclosure in discovery or trial in civil litigation?

(Doc. 47 at 1). The statute that governs is K.S.A. 60–3201, which is as follows:

> The Kansas supreme court may answer questions of law certified to it by . . . a United States district court . . . when requested by the certifying court if there are involved in any proceeding before it questions of law of this state which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of the supreme court and the court of appeals of this state.

■ The decision to certify rests in the sound discretion of the district court. Certification is not to be routinely invoked whenever a federal court is presented with an unsettled question of state law. *Armijo v. Ex Cam, Inc.,* 843 F.2d 406, 407 (10th Cir. 1988); *Marzolf v. Gilgore,* 924 F.Supp. 127, 129 (D.Kan.1996).

■ The first question is whether federal or state law governs concerning the claims of privilege in this case. Under Federal Rule of Evidence 501, in federal question cases the federal common law of privileges applies. On the other hand, if state law provides the rule of decision, state privilege law will apply. *Wm. T. Thompson Co. v. General Nutrition Corp., Inc.,* 671 F.2d 100, 103 (3d Cir.1982). However, the rule is silent on what law of privilege applies when the same bit of evidence is relevant to both the state and federal claims. 23 Wright and Graham, *Federal Practice and Procedure* § 5434 at 861 (1980). Wright and Graham acknowledge that there are several ways of handling this problem. *Id.* at 861–864. The U.S. Supreme Court, noting the above analysis by Wright and Graham in a recent opinion, expressed no opinion on the matter. *Jaffee v. Redmond,* — U.S. —, — n. 15, 116 S.Ct. 1923, 1931 n. 15, 135 L.Ed.2d 337 (1996). However, all of the circuits that have directly addressed this issue have held that the federal law of privilege governs on issues of discoverability and/or admissibility even where the evidence sought might be relevant to a pendant state claim. *Hancock v. Hobbs,* 967 F.2d 462, 466–67 (11th Cir.1992); *Hancock v. Dodson,* 958 F.2d 1367, 1372–73 (6th Cir.1992); *von Bulow v. von Bulow,* 811 F.2d 136, 141 (2d Cir.), *cert. denied,* 481 U.S. 1015, 107 S.Ct. 1891, 95 L.Ed.2d 498 (1987); *Wm. T. Thompson Co. v. General Nutrition Corp.,* 671 F.2d 100, 104 (3d Cir.1982); *Memorial Hospital for McHenry County v. Shadur,* 664 F.2d 1058, 1061 n. 3 (7th Cir.1981).

Then there is the case of *Motley v. Marathon Oil Co.,* 71 F.3d 1547 (10th Cir.1995), *cert. denied,* — U.S. —, 116 S.Ct. 1678, 134 L.Ed.2d 781 (1996). In *Motley,* the plaintiff claimed that her employer discriminated against her on account of her race, in violation of federal and state law. The court then addressed a discovery issue involving the attorney-client privilege. The court stated as follows:

> Motley asserted both federal and state causes of action. As to state causes of action, a federal court should look to state law in deciding privilege questions. Fed. R.Evid. 501; *White v. American Airlines, Inc.,* 915 F.2d 1414, 1424 (10th Cir.1990). We have held that "some type of prima facie showing of a crime or fraud is required under Oklahoma law in order to trigger the applicability of the crime-fraud exception." *Id.* at 1551.

It thus could be argued that the 10th Circuit has decided not to follow the other circuits when both federal and state causes of action have been asserted in a case.

However, it is not clear that the 10th Circuit directly addressed the issue. The *Motley* opinion does not discuss at all the conflict in the law or any opinion or legal authority concerning what law should apply when both federal and state causes of action are in a case. *Motley* cites language in Fed.R.Evid. 501 which calls for looking at state law when there is a state cause of action. However, Rule 501 is silent on what should be done when a case contains both state and federal causes of action. The citation to the *White* opinion provides little help since that case, also citing the language of Rule 501, involved only state causes of action, since the federal cause of action had been dismissed before trial, and the dispute involved the application of a privilege to trial testimony. *White,* 915 F.2d at 1418–19, 1423–24.

This court seriously doubts that the 10th Circuit has directly addressed the issue of which privilege law applies when the evidence is relevant to both state and federal claims that are in a case. However, this court is bound by the decisions of the 10th Circuit. Therefore, the court will analyze this motion based on the possibility that the 10th Circuit intended for state law of privilege to apply to the state causes of action in a case wherein both federal and state claims have been asserted.

■ Even if this is the rule in this circuit, the 10th Circuit has not held that state law of

privilege applies to the federal causes of action. No court has taken the position that state law of privilege would bar discovery on federal claims in a case, 23 Wright and Graham, *Federal Practice and Procedure* § 5434 at 862, and the court finds no reason to believe that the 10th Circuit would adopt this position.[1] Therefore, the court finds that as to the federal claims, the court should look to federal law on privilege for guidance in determining the discoverability of what transpired during relevant closed meetings of the city commission.

Since the state law on privilege does not control as to the federal claims, the court sees less need to certify the question to the Kansas Supreme Court. Second, the court believes that the issue is one that can be adequately addressed by this court given the case law and language of the statute. Therefore, the court will deny the motion to certify the question to the Kansas Supreme Court.

IT IS THEREFORE ORDERED that the motion to certify (Doc. 47) is denied.

■ The court will now address the issue of whether the statements made in the closed session are privileged. To the extent that any statements implicate the attorney-client privilege, there is no dispute that said statements are privileged under federal common law. *See Jones v. Boeing Co.*, 163 F.R.D. 15, 17 (D.Kan.1995).

■ However, the mere attendance of an attorney at a meeting does not render everything done or said at that meeting privileged. For communications at such meetings to be privileged, they must have related to the acquisition or rendition of professional legal services. The mere fact that clients were at a meeting with counsel in which legal advice was being requested and/or received does not mean that everything said at the meeting is privileged. The party seeking to assert the privilege must show that the particular communication was part of a request for advice or part of the advice, and that the communication was intended to be and was kept confidential. To be privileged, the com-

munication must relate to the business or transaction for which the attorney has been retained or consulted. *Case v. Unified School District # 233*, Case No. 94–2100–GTV, 1995 WL 358198 at *4, 5 (D.Kan. June 2, 1995).

■ While K.S.A. 75–4319 does permit closed meetings in order to consult with an attorney, the mere fact that a closed meeting was held does not automatically render all conversations in the closed session protected by the attorney-client privilege. The attorney-client privilege would protect communications from commission members to counsel for purposes of obtaining legal advice. It would also include the legal advice given to the Board members by counsel. However, the privilege does not protect discussions among commission members or the opinions, impressions, and conclusion of commission members based upon events occurring during the closed session. *See Case*, 1995 WL at *5, 7.

■ The court will now address the larger question of whether K.S.A. 75–4319 was intended to render all matters privileged from discovery in civil litigation. Specifically, defendants argue that personnel matters discussed in executive session are privileged from disclosure. First, nothing in the language of the statute indicates any legislative intent to render all matters discussed in closed session privileged. The language of this statute is very different from the risk management statute, which provides in K.S.A. 65–4925(a) that certain records and reports shall be "confidential and privileged" and not subject to discovery or other means of legal compulsion and shall not be admissible in a civil action. Likewise, the peer review statute, in K.S.A. 65–4915(b), states that certain reports "shall be privileged and shall not be subject to discovery, subpoena or other means of legal compulsion ... or be admissible in evidence in any judicial ... proceeding." K.S.A. 75–4319 has none of the language used in other statutes that create privileges, i.e., K.S.A. 60–423 through 60–436.

1. The authors in *Federal Practice and Procedure* indicate that they do not believe that any court is likely to embrace this approach. *Id.*

There is certainly no indication of any legislative intent from the language of the statute to create a privilege against disclosure in court proceedings.

In addition, Kansas courts have twice stated that the purpose of the "personnel matters" section of K.S.A. 75–4319 is to protect privacy rights of employees, save personal reputations, and encourage qualified people to seek government employ. *Walker v. Board of Educ., U.S.D. No. 499, Cherokee County,* 21 Kan.App.2d 341, 344, 900 P.2d 850, *rev. denied,* 257 Kan. 1097 (1995); *State v. Board of Educ. of U.S.D. No. 305, Saline County,* 13 Kan.App.2d 117, 119, 764 P.2d 459 (1988). In *Walker,* the court rejected the argument of the school board that the statute granted a privacy right to the school board in a case brought by a former employee.

Exceptions to the demand for all relevant evidence should not be lightly created nor expansively construed, for they are in derogation of the search for truth. *United States v. Nixon,* 418 U.S. 683, 710, 94 S.Ct. 3090, 3108, 41 L.Ed.2d 1039 (1974). Privileges should only be granted to the extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth. *Nixon,* 418 U.S. at 710 n. 18, 94 S.Ct. at 3108 n. 18. Caution should be especially taken in recognizing a privilege in a federal civil rights action, where any assertion of privilege must overcome the fundamental importance of a law meant to protect citizens from unconstitutional state action. *Mason v. Stock,* 869 F.Supp. 828, 833 (D.Kan.1994).

Therefore, the court holds that matters discussed during closed or executive meetings pursuant to K.S.A. 75–4319 are not privileged from discovery in civil litigation under federal common law or Kansas law, unless those matters implicate other recognized privileges, such as the attorney-client privilege. Nothing in the body of the statute or case law support such an interpretation, and courts should be especially cautious in recognizing a privilege in civil rights actions designed to protect citizens from unconstitutional state action.

Even if Kansas were to recognize such a privilege, state law does not govern discoverability and confidentiality in federal claims cases. Questions of privilege in federal claims cases are governed by federal law. When no federal rule exists governing the privilege being raised, the court must balance the interests favoring and opposing confidentiality in the discovery phase of the litigation. A strong policy of comity between state and federal sovereignties impels federal courts to recognize state privileges where this can be accomplished at no substantial cost to federal substantive and procedural policy. To resolve discovery disputes of this kind, the court must balance the interests favoring and disfavoring disclosure. *King v. Conde,* 121 F.R.D. 180, 187, 188 (E.D.N.Y. 1988) (Weinstein, J.). The same rule applies when the plaintiff raises both federal and state law claims. *Jiricko v. Coffeyville Memorial Hospital Medical Center,* 700 F.Supp. 1559, 1564 (D.Kan.1988).

It obviously would make no sense to permit state law to determine what evidence is discoverable in cases brought pursuant to federal statutes whose central purpose is to protect citizens from abuses of power by state or local authorities. If state law controlled, state authorities could effectively insulate themselves from constitutional norms simply by developing privilege doctrines that made it virtually impossible for plaintiffs to develop the kind of information they need to prosecute their federal claims.

*Mason,* 869 F.Supp. at 832; *King v. Conde,* 121 F.R.D. at 187–88; *Kelly v. City of San Jose,* 114 F.R.D. 653, 656 (N.D.Cal.1987).

In the case of *United States v. Phoenix Union High School District,* 681 F.2d 1235 (9th Cir.1982), *cert. denied,* 459 U.S. 1191, 103 S.Ct. 1169, 75 L.Ed.2d 422 (1983), the U.S. Government sought minutes from a school board executive session meeting to determine if the school district was in compliance with the Civil Rights Act of 1964. An Arizona statute stated that "minutes of executive sessions shall be kept confidential except from members of the public body which met in executive session." Thus, unlike the Kansas statute, the Arizona statute expressly

stated that the minutes of executive session meetings were to be kept confidential. The court nonetheless held that the generally worded privilege would be construed to prohibit voluntary public disclosure and not disclosure pursuant to a legitimate legal inquiry. *Id.* at 1236, 1237. Thus, any executive session privilege should not prevent disclosure necessary to a legal inquiry under federal civil rights laws. Otherwise, governmental bodies would be able to virtually insulate themselves from any accountability for civil rights violations by preventing the disclosure of evidence that could be vital to any federal civil rights claim.

There is no doubt that evidence of closed sessions of the city commission pertaining to the plaintiffs could be highly relevant to the federal civil rights claims being asserted in this case. Nonetheless, the court should be sensitive to the privacy interests protected by state law. As was previously noted, K.S.A. 75–4319 is designed to protect the privacy interests of employees, save personal reputations, and encourage qualified people to seek government employ. However, a protective order could be fashioned to prevent disclosure of any discovery obtained about the closed sessions of the city commission except to the parties to this litigation. This would serve the purpose of the statute while allowing the search for the truth. A protective order would protect the privacy interests of any non-party personnel, such as the city manager, who may also have been discussed at the closed meetings.

IT IS THEREFORE ORDERED that the motion to compel (Doc. 22) is granted in part and denied in part, as set forth above.

IT IS FURTHER ORDERED that the motion for protective order (Doc. 25) is granted in part and denied in part as set forth above.

Plaintiffs also seek an award of sanctions under Fed.R.Civ.P. 37(a)(4). Since the motion was only granted in part, the court finds that it is not appropriate to award sanctions in conjunction with the motion to compel. In addition, even as to that portion of the order in which the court found in favor of the plaintiffs, the court finds that defendant's objections were made in good faith since there is no case directly on point.

IT IS THEREFORE ORDERED that the motion for sanctions (Doc. 22) is denied.

The final issue before the court are the motions for an extension in the scheduling order (Doc. 22, 49). The court finds that good cause has been shown to set new deadlines in light of the above motions and the time needed to resolve them.

IT IS THEREFORE ORDERED that the court will have a status/scheduling conference on April 25, 1997 at 10:00 a.m. in Room 403, U.S. Courthouse, 401 N. Market St., Wichita, Kansas. At that time, the court will discuss with counsel new dates for a revised scheduling order. The final pretrial conference, presently scheduled at that day and time, will be moved to a new date and time in a revised scheduling order following the conference.

Copies of this order shall be mailed to counsel of record for the parties.