Robert R. BAKER, Appellant–Plaintiff,

v.

The TOWN OF MIDDLEBURY, Indiana, and Gregg Fore, James Riegsecker, James Miller, Gary O'Dell, Ruth Eash, All in their official capacities as members of the Middlebury, Indiana Town Council, Appellees Defendants.

No. 20A05–0012–CV–523.

Court of Appeals of Indiana.

Aug. 6, 2001.

Richard W. Rogers, Middlebury, IN, Attorney for Appellant.

Craig M. Buche, Yoder, Ainlay, Ulmer & Buckingham, Goshen, IN, Attorneys for Appellees.

## OPINION

BAKER, Judge.

Appellant-plaintiff Robert R. Baker appeals the trial court's dismissal of his complaint pursuant to Ind.Trial Rule 12(B)(6) for failure to state a claim upon which relief can be granted. Specifically, Baker contends that the appellee-defendant Middlebury Town Council's (Council) compilation of the list of employees to be rehired for the year 2000 in executive session, and his exclusion from that list, constituted impermissible final action in violation of IND.CODE §§ 5–14–1.5–1 to 8 (Open Door Law). Baker also contends that the Council violated the Open Door Law by giving incorrect notice of the subject matter of its executive session, and that trial court erred in dismissing his complaint with prejudice.

### FACTS

The facts most favorable to the non-movant are that Baker was employed as the Town Marshal for the Town of Middlebury (Middlebury). At 4:00 p.m. on January 4, 2000, the Council convened in executive session at the Town Hall. During that session, the Council President told Baker that the Council had decided not to rehire him as Town Marshal because of "problems with the police department." Record at 9. Baker was advised that he would be excluded from the list of employees to be rehired for the year 2000 and was then escorted out of the council chambers and required to surrender his equipment to the Elkhart County Sheriff. At 6:00 p.m. that evening, the Council convened in regular public session, during which it voted to approve the list of Town employees to be rehired and to approve a new interim Town Marshal.

On February 3, 2000, Baker filed suit against Middlebury alleging that the Council had violated Indiana's Open Door Law because it took final action in executive session and gave incorrect notice of the subject matter of that session. In response, on March 31, 2000, Middlebury filed a T.R.12(B)(6) motion to dismiss the action for failure to state a claim upon which relief can be granted. On November 27, 2000, the trial court granted Middlebury's motion with prejudice. Baker now appeals.

### DISCUSSION AND DECISION

#### I. Standard of Review

In reviewing a motion to dismiss granted pursuant to T.R. 12(B)(6), our standard of review is well settled. A T.R.

12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted tests the legal sufficiency of the claim, not the facts supporting it. *Am. Dry Cleaning & Laundry v. State*, 725 N.E.2d 96, 98 (Ind.Ct.App.2000). Therefore, we view the complaint in the light most favorable to the non-moving party, drawing every reasonable inference in favor of this party. *Id.* In reviewing a ruling on a motion to dismiss, we stand in the shoes of the trial court and must determine if the trial court erred in its application of the law. *Id.* The trial court's grant of the motion to dismiss is proper if it is apparent that the facts alleged in the complaint are incapable of supporting relief under any set of circumstances. *Id.* Furthermore, in determining whether any facts will support the claim, we look only to the complaint and may not resort to any other evidence in the record. *Id.*

## II. Baker's Claims

### A. Violation of the Open Door Law

Baker first contends that the trial court erred in dismissing his complaint pursuant to T.R. 12(B)(6) for failure to state a claim upon which relief can be granted. Specifically, Baker asserts that the Council's compilation of the list of employees to be rehired for the year 2000 in executive session, and his exclusion from that list, constituted impermissible final action in violation of provision I.C. § 5–14–1.5–6.1(c) of the Open Door Law.

■ In addressing Baker's contention, we note that the legislature passed the Indiana Open Door Law in 1977 with the intention that the business of the State of Indiana and its political subdivisions be

conducted openly so that the general public may be fully informed. I.C. § 5–14–1.5–1. We are required to liberally construe the statute in order to give effect to the legislature's intention. *Id.* Accordingly, "all doubts must be resolved in favor of requiring a public meeting and all exceptions to the rule requiring open meetings must be narrowly construed." *Evansville Courier v. Willner*, 553 N.E.2d 1386, 1388 (Ind.Ct.App.1990), *vacated in part, adopted in part by* 563 N.E.2d 1269 (Ind. 1990).

■ Moreover, where the words of the statute are clear and unambiguous, they will be given their plain, ordinary, and unbridled meaning. *Common Council of the City of Peru v. Peru Daily Tribune*, 440 N.E.2d 726, 729 (Ind.Ct.App.1982). It can be presumed that the legislature intended its language to be applied in a logical manner consistent with the underlying policies and goals of the statute. *Id.* Further, when certain items or words are specified or enumerated in the statute, by implication other items or words not so specified are excluded. *Id.* Finally, exceptions to a statute and its operation should be strictly construed by placing the burden of proving the exception upon the party claiming it. *Id.*

The Open Door Law permits executive sessions in certain specified instances. An "executive session" is defined as "[a] meeting from which the public is excluded, except the governing body[1] may admit those persons necessary to carry out its purpose." I.C. § 5–14–1.5–2(f). A "meeting" is defined as "[a] gathering of a majority of the governing body of a public agency for the purpose of taking official action upon

---

**1.** A "governing body" means, among other things, two or more individuals who are a public agency that is a council and which takes official action on public business. I.C.

§ 5–14–1.5–2(b)(1). Neither party disputes that the Council is a governing body under the Open Door Law.

public business." I.C. § 5–14–1.5–2(c). "Official action" means to:

(1) receive information;

(2) deliberate;

(3) make recommendations;

(4) establish policy;

(5) make decisions; or

(6) take final action.

I.C. § 5–14–1.5–2(d). The only official action that cannot take place in executive session is a final action, which must take place at a meeting open to the public. I.C. § 5–14–1.5–6.1(c). A "final action" is defined as "[a] vote by the governing body on any motion, proposal, resolution, rule, regulation, ordinance, or order." I.C. § 5–14–1.5–2(g).

IND.CODE § 5–14–1.5–6.1(b) enumerates eleven instances where a public body may meet in executive session. In this instance, the executive session was held under the exception permitting discussion of "a job performance evaluation of individual employees." I.C. § 5–14–1.5–6.1(b)(8). Baker asserts that Middlebury went beyond the scope of this exception for employee evaluations and took impermissible final action by compiling the list of employees to be rehired and excluding him from that list.

■■■ However, the Open Door Law does not prohibit Middlebury from receiving information, making recommendations, establishing policy, and making *decisions* in executive session. *See* I.C. § 5–14–1.5–2(d) (emphasis supplied); I.C. § 5–14–1.5–6.1(c). In this instance, Middlebury made a *decision* not to include Baker on the list of rehires to be presented at the open meeting. This decision not to rehire Baker was subsequently implemented at the public session by vote approving the list of rehires, of which Baker was not included, and by approving a new interim marshal.[2] "Final action," by definition, is "[a] *vote* by the governing body on any motion, proposal, ... or order." I.C. § 5–14–1.5–2(g) (emphasis supplied). Because words in statutes are given their plain and ordinary meaning, *see Peru,* 440 N.E.2d at 729, the Council's "final action" on the issue of which employees would be rehired consisted of its vote at the public meeting, not its compilation of the rehire list in executive session reflecting its decision on what final action should be taken.

Baker relies upon this court's opinion in *Evansville Courier,* 553 N.E.2d at 1389,[3] for the proposition that the Council's acts in executive session constituted final action according to the statute. In *Evansville Courier,* two County Commissioners met privately to discuss appointees for the position of superintendent. *Id.* at 1387. They then announced and introduced their selected appointee, Riney, at a press conference before the regular public meeting.

2. The minutes of the public session held on January 4, 2000, reflect that:

Council was given a listing of Town Employees to be hired. Gregg Fore ask's [sic] for motion to hire Town Employees on the list for the year 2000. Jim Riegsecker moves to accept motion, Jim Miller, seconded, Council approves the hiring of Town Employees so listed.

. . . .

Gregg Fore stated that Town Marshal Robert Baker was not included in the list of employees hired for the year 2000.

Jim Riegsecker made a motion to approve Michael Hutchison as interm [sic] Marshal. Seconded by Ruth Eash, motion carried. R. at 36–38.

3. Our Supreme Court subsequently granted transfer in this case and adopted this court's opinion in part and vacated it in part. *See Evansville Courier v. Willner,* 563 N.E.2d 1269 (Ind.1990). Specifically, our Supreme Court wrote to clarify when a caucus is transformed into a meeting subject to full public scrutiny, but left this court's holdings intact.

*Id.* Later the same day, at the regular public meeting:

> Without having discussed the matter during the meeting and without having taken a roll call vote, [the two Commissioners] announced Riney was the Commissioners' choice to fill the Superintendent position. [One of the Commissioners] also read aloud from a standard employment change form, listing Riney's appointment, his address, and his salary. Then [the two Commissioners] signed the employment change form and gave it to the Secretary of the County Commission to become part of the Commission's official minutes.

*Id.* This court determined that the Commissioners' private meetings to discuss the appointees were not political caucuses exempt from the Open Door Law, and, therefore, the meetings were required to be open to the public or to be scheduled in advance as executive sessions with notice given to the public. *Id.* at 1390. Thus, the Commissioners' meetings violated the Open Door Law.

In addition, this court addressed whether the action taken by the Commissioners at the regular public meeting constituted "final action" for appointing Riney as Superintendent in the absence of an actual vote. This court held that the totality of the Commissioners' acts in public session constituted "a public vote" and "final action," but that appropriate final action cannot cure an earlier violation of the Open Door Law. *Id.* at 1390–91. Thus, *Evansville Courier* addressed the legality of the Commissioners' private meetings regarding hiring the appointment of a new superintendent and whether acts in public session can constitute a vote in the absence of a formal "vote taken by motion, second of motion or roll call vote." *Id. Evansville Courier* does not stand for the proposition that if a governing body conducts a properly noticed executive session, it cannot have discussions and make decisions short of taking a vote.

In the case at bar, the Council's discussion was held in a noticed executive session, the Council made decisions in that session as it is authorized to do by statute, and it instituted its decisions by an actual vote at the subsequent public session. There were no unauthorized private meetings or public announcements prior to the public session, and the list of employees to be rehired remained subject to public scrutiny and to final approval in the subsequent open meeting. Thus, our determination that the Council in this case did not act in violation of the Open Door Law is not altered by this court's opinion in *Evansville Courier*.

Our determination that it was appropriate for the Council to compile its list of rehires in private session, rather than in public, also comports with the guiding principles of the statute and with public policy protecting the privacy rights of individuals with respect to sensitive personnel matters. Specifically, private discussion of an employee's job performance evaluation does not significantly prevent or impair the public's knowledge or understanding of the people's business, and it is in the public interest to promote efficient personnel management and maintain employee morale. Furthermore, permitting employee evaluations to take place in private session prevents the employee from experiencing public embarrassment related to the critique of his or her work performance and avoids needless injury to the employee's reputation. While there are no Indiana cases discussing the bases for the "employee evaluation" exception to Indiana's Open Door Law, other jurisdictions have found similar bases for exceptions to their respective open door laws for personnel-re-

lated matters. *See, e.g., Doherty v. Sch. Comm. of Boston,* 386 Mass. 643, 436 N.E.2d 1223, 1226 (1982) (acknowledging that disciplinary action against public employees was expressly excepted from the State's open meeting law to protect employees' reputation, effectuate good personnel management, and maintain employee morale); *Kansas v. Bd. of Educ.,* 13 Kan.App.2d 117, 764 P.2d 459, 461 (1988) (noting that the suggested purpose of excepting personnel matters from the Kansas Open Meetings Act is "to protect privacy rights of employees, save personal reputations, and encourage qualified people to remain in government employ"); *Meyer v. Bd. of Regents,* 1 Neb.App. 893, 510 N.W.2d 450, 454 (1993) (stating that the "Nebraska public meeting law reflects the Legislature's judgment of the appropriate balance between the public interest in open discussion of governmental issues and the rights of individuals, such as state employees, to have their [work] performance ... considered in private" and to avoid injury to the individual's reputation).

In this instance, whether an employee was to be rehired depended in large part upon the quality of that employee's work performance. Therefore, compilation of the rehire list necessarily involved some discussion of whether the employees under consideration had met the requisite work performance standard to merit being rehired. Forcing the Council to compile this list in public would run the risk of exposing personal employee information to the public. While we are required to liberally construe the Open Door statute to give effect to the legislature's intention that the business of government be conducted publicly, *see* I.C. § 5–14–1.5–1, we should also give deference to the legislature's determination that public discussion of an employee's job performance does not so advance the goal of open government

that it warrants encroaching upon the privacy rights of individual employees. Thus, we conclude that the Council's act of compiling the rehire list in executive session, and excluding Baker from that list, was appropriate according to both the language and goals of the statute and did not constitute impermissible final action.

Baker also contends that Middlebury violated the Open Door Law by giving incorrect notice of the subject matter of the executive session by posting the wrong subsection of the statute. I.C. § 5–14–1.5–6.1(d) provides:

> Public notice of executive session must state the subject matter by specific reference to the enumerated instance or instances for which executive sessions may be held under subsection (b).

As previously mentioned, Middlebury noticed the executive session under I.C. § 5–14–1.5–6.1(b)(8), which provides that executive sessions may be held "to discuss a job performance evaluation of individual employees." According to Baker, the actual purpose of the executive session was to discuss his continued status as an employee. Therefore, he asserts that Middlebury should have noticed the meeting under I.C. § 5–14–1.5–6.1(b)(5), which permits an executive session:

> With respect to any individual over whom the governing body has jurisdiction:
>
> (A) to receive information concerning the individual's misconduct; *and*
>
> (B) to discuss, before a determination, the individual's status as an employee, a student, or an independent contractor who is a physician.

(Emphasis supplied).

According to Baker, if the executive session had been conducted pursuant to I.C. § 5–14–1.5–6.1(b)(5), Middlebury would not have been permitted to come to a final

decision not to rehire him because this provision provides only for discussion *"before a determination,* of the individual's status as an employee." (Emphasis supplied). Moreover, Baker asserts that the Council misled the public by noticing the incorrect subsection of the statute.

We note that subsection (b)(5) is written in the conjunctive. Therefore, in order for this subsection to apply, the Council must have met to receive information about Baker's misconduct *and* to discuss his employment status. However, while Baker asserts in his complaint and brief that the Council actually discussed his status as an employee, he fails to make a similar assertion that the Council received information regarding any misconduct on his part. Specifically, Baker states that the Council decided not to rehire him because of "problems with the police department," but he does not suggest in his complaint, legal memorandum, or brief, that these "problems" were related to any reported misconduct or that the Council alleged that he engaged in misconduct. Accordingly, the allegations in his complaint are incapable of supporting his claim that Middlebury gave improper notice of the subject matter of its executive session. *See Am. Dry Cleaning,* 725 N.E.2d at 98.[4]

### B. Dismissal "With Prejudice"

▆▆▆ Finally, Baker contends that the trial court committed a procedural error in dismissing his complaint "with prejudice," and that he should have been allowed to amend his complaint as a matter of right. T.R. 12 provides in relevant part that "[w]hen a motion to dismiss is sustained for failure to state a claim under subdivision (B)(6) of this rule the pleading may be amended once as of right." T.R. 12(B). "Accordingly, a T.R. 12(B)(6) dismissal is without prejudice, since the complaining party remains able to file an amended complaint within the parameters of the rule." *Platt v. State,* 664 N.E.2d 357, 361 (Ind.Ct.App.1996), *trans. denied.* Thus, the trial court erred in dismissing Baker's complaint "with prejudice."

However, Baker has not shown on appeal how he would have amended his complaint to avoid T.R.12(B)(6) dismissal. Just as an offer of proof allows this court to determine the admissibility of evidence and the potential for prejudice if it is excluded, we likewise need specific information as to how Baker would have amended his complaint to make a rational assessment of whether he was prejudiced by the trial court's ruling. As Baker has not demonstrated prejudice, we must conclude that the trial court's error was harmless.[5]

Judgment affirmed.

BAILEY, J., and MATHIAS, J., concur.

---

4. In his reply brief, Baker also argues that, "[A]s a public officer, he could not be the subject of the notice given or discharged in executive session." Appellant's reply brief at 22–33. Baker failed to raise this argument before the trial court or in his original appellant's brief. A reply brief only enables the appellant to respond to the appellee's brief and a party may not assert new issues therein.

Ind.Appellate Rule 8.3(C); *Crist v. K–Mart Corp.,* 653 N.E.2d 140, 144 (Ind.Ct.App.1995).

5. Had Baker shown prejudice, the proper remedy in this instance would have been to remand to the trial court to allow him to amend his complaint. *See Browning v. Walters,* 620 N.E.2d 28, 33 (Ind.Ct.App.1993) On petition for rehearing, this court addressed the situation where the trial court granted

defendant's T.R.12(B)(6) motion to dismiss "with prejudice." *Id.* We concluded that the trial court properly granted the motion but should have allowed the plaintiff ten days to amend his complaint. *Id.* Accordingly, we remanded the case to the trial court to allow plaintiff ten days to exercise his right to amend his complaint. *Id.* Middlebury cites *Dixon v. Siwy,* 661 N.E.2d 600, 605 n. 8 (Ind.Ct.App.1996), *Platt v. State,* 664 N.E.2d 357, 361 (Ind.Ct.App.1996), *trans. denied,* and *Parrett v. Lebamoff,* 179 Ind.App. 25, 383 N.E.2d 1107, 1109 (1979), for the proposition that a plaintiff waives his right to amend his complaint by proceeding directly to appeal. However, those cases are distinguishable from the case at bar inasmuch as they do not address the appropriate remedy when a trial court dismisses the complaint "with prejudice," seemingly foreclosing the plaintiff's automatic right to amend.